ROBERT L. HAWKINS AND CHARLOTTE R. HAWKINS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hawkins v. Commissioner
Docket Nos. 1979-85; 1980-85.
United States Tax Court
T.C. Memo 1988-17; 1988 Tax Ct. Memo LEXIS 17; 54 T.C.M. (CCH) 1529; T.C.M. (RIA) 88017; January 12, 1988; As amended January 12, 1988 Rick Bud and Ben Spitzer, for the petitioners. Cynthia J. Olsen, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a) [1]
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1975
$  2,284
$ 114
-
-
1978
12,249
612
-
-
1979
19,590
980
-
-
1980
18,301
915
-
-
1981
9,881
-
$ 494 *
*19 After concessions, the issues for decision are: (1) whether petitioners' exotic animal farm was an "activity not engaged in for profit" within the meaning of section 183; (2) whether petitioners are entitled to deductions for automobile expenses and depreciation; and (3) whether petitioners are liable for additions to tax for negligence under sections 6653(a), 6653(a)(1), and 6653(a)(2). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Robert L. Hawkins (hereinafter referred to as "petitioner" or "Dr. Hawkins") and Charlotte R. Hawkins (hereinafter referred to as "Mrs. Hawkins"), husband and wife, were residents of Longmont, Colorado at the time of the filing of the petitioners herein. Both petitioner and his wife have farming backgrounds. Petitioner was born and *20 raised on a farm in California, where he helped his father until he left home to attend college. While in college, he worked at the college dairy farm to help pay his expenses. He received a bachelor's degree in biology but took a number of elective agricultural course. In 1967, he received a doctorate degree in osteopathy. Mrs. Hawkins was raised on a farm in Lincoln, Nebraska. Both she and petitioner enjoy farm work. In 1968, petitioner opened an osteopathic medical practice in Longmont, Colorado and has maintained that practice at all relevant times. [2] During the years at issue, Mrs. Hawkins was employed by petitioner as a nurse, office manager, receptionist, and bookkeeper. Petitioners reported net profit from the medical practice and wages paid to Mrs. Hawkins on their Federal income tax returns [3] as follows: Year
Net Profit
Wages
Total
1975
$ 29,455
-
$ 29,455
1976
45,065
-
45,065
1977
50,193
-
50,193
1978
39,082
$  7,200
46,282
1979
42,682
12,000
54,682
1980
48,057
12,000
60,057
1981
33,108
13,000
46,108
*21 Petitioner found his osteopathic practice to be stressful; he decided to go into farming because it provided him with an outlet to relax and unwind. Petitioner purchased a 310-acre farm in Morgan County, Colorado (hereinafter referred to as "the Morgan County farm") in 1974 and leased it to a tenant on a sharecrop arrangement. He reported losses from the Morgan County farm throughout the years in issue, but the deductibility of such losses is not herein at issue. In July, 1975, petitioner purchases an 80-acre farm in Weld County, Colorado (hereinafter referred to as "the Weld County farm" or "the farm"). The farm is located approximately 19 miles from Longmont and, at the time of purchase, consisted of a farmhouse and several buildings, all of which were in rundown condition. Petitioner is a frugal person. He purchased at auction used lumber, fencing and posts, as well as paint which he used to repair, maintain and improve the Weld County farm. He performed the majority of the work himself, but enlisted the help of *22 friends to construct a 12-foot fence around the perimeter of the farm property. Shortly after the farm was acquired, petitioner began acquiring exotic animals to populate the farm. He has long held an interest in such animals; he has hunted on several exotic animal farms in Texas and has traveled to Africa for safaris on at least four occasions. He displays approximately 30 trophy heads in his medical office. Throughout the years in issue, petitioner kept a variety of wild animals on the Weld County farm, including tigers, lions, jaguars, leopards, peacocks, sika deer, mouflon sheep, addax, scimitar-horned oryx, tahr, ibex, audad, Pere David deer, llamas, and elk. He also kept typical farm animals, including domestic sheep, cattle, ducks, geese, chickens, and horses. In total, during the years at issue, petitioner kept approximately 8 to 15 cats (e.g., lions, tigers, jaguars, and leopards), 100 to 115 hoofed animals, and numerous birds. Petitioner did not know the exact number of animals he owned at any given time because he did not keep a running inventory. With the exception of a few hoofed species, petitioner purchased only two or three of a wide variety of exotic animals, *23 despite the fact that successful breeding of exotic animals requires a reasonably large herd of each type of animal sought to be bred. Many of the animals owned by petitioner died. Depending upon the type of animal that died, petitioner sometimes sold the body for mounting. When one of his leopards died sometime after 1981, petitioner had it mounted for his personal use. Petitioner applied for, and was granted, a noncommercial (rather than commercial) wildlife park license. He informed the local authorities that the raising of animals on the farm was not profit-oriented. He obtained this license by asserting that the farm was a hobby and that the animals were not being raised for commercial purposes. Also, when he applied for a United States Department of Agriculture (hereinafter referred to as "USDA") dealer's license, he informed USDA officials that he did not intend to become a dealer in wild animals and that the animals were kept only as a hobby. He made these same statements on other occasions, including during a 1979 deposition and during a local court proceeding against him for zoning violations. Routine inspections by a USDA Veterinary Medical Officer during September *24 and November of 1980 revealed numerous deficiencies in petitioner's operations, including the following: inadequate lighting and ventilation in the cat barn, which contribute to bacterial and viral propagation that can endanger the animals' health; exposing the animals and their food to feces, which carry disease and parasites; forcing the hoofed animals, which were in very poor condition, to stand in large pools of water and mud; the feeding of decomposed animal carcasses, which were covered with fly strike and maggots, to the cats; protruding nails in the nesting boxes for the cats, which could cause trauma to the cats; and rusted water containers for the cats, together with water that was covered with an oily film. The deficiencies in petitioner's standard of care for his animals may have adversely affected their ability to reproduce. As a result of these investigations, petitioner was informed that charges would be filed against him. In response, petitioner surrendered his USDA license on November 13, 1980. On the reverse side of the license, petitioner signed the following statement: "I, Robert Hawkins, voluntarily surrender my license and no longer engage in [the] business *25 of buying, selling, transporting or advertising or exhibiting animals." Petitioner never again filed an application for a USDA dealer's license. In 1980, petitioner was prosecuted for unlawful possession of wildlife without a license with respect to his possession of a mountain lion and a chukar partridge at his home in Longmont, Colorado. At the trial of that case, petitioner testified that the purpose of the Weld County farm was to raise, as a hobby, exotic wild animals. Petitioner was convicted of the charges. In 1980, petitioner was also charged with the unlawful possession of wildlife and the unlawful importation of wildlife with respect to the Weld County farm. Petitioner pled guilty to both charges in April, 1981, and received a deferred sentence under which he was required to comply with certain terms and conditions. In accordance with the deferred sentence agreement, several unannounced inspections of petitioner's Weld County farm were conducted by representatives of the Colorado Division of Wildlife. The premises were found to be in the same extremely poor sanitary conditions as were previously discovered during other inspections of the farm. Petitioner's deferred *26 sentence was revoked on April 26, 1983 because of his failure to remedy the deficiencies both in his property and in the care he gave his animals. On June 9, 1983, petitioner was sentenced to 90 days probation and assessed a fine of $ 150. Petitioner frequently began his day by first stopping at the farm to feed his animals. He would then stop at the hospital or sometimes his office (which was only two miles from the hospital) to pick up paperwork. During the day, petitioner occasionally traveled between his office and the hospital or a nursing home to visit patients. The distance between the hospital and his office is one-half mile, and the distance between the nursing home and his office is 2-1/2 to 3 miles. [4]
Petitioners reported no sales of animals from the Weld County farm for taxable years 1976 through 1978. In 1979, one sheep was sold for $ 200 and one leopard was sold for $ 1,200. During 1980, petitioners sold a mountain lion, an addax and two audads for a total selling price of $ 3,300. Petitioners sold one pigmy goat during 1981 for which they reported a selling price of $ 50. *27 Petitioner's recordkeeping system for the exotic animal farm consisted of a folder into which petitioner periodically placed receipts for out of pocket expenses incurred in connection with the farm. Petitioner reviewed these receipts only once a year and only for purposes of income tax return preparation. Petitioner did not maintain a separate bank account for the farming activities, nor did he maintain a running inventory of the animals. Petitioner kept no records of the animals' nutrition or medical history. On their Federal income tax returns for the years 1976 through 1982, [5] petitioners reported the following income, expenses and losses on Schedule F with respect to the Weld County farm activities: 1976
1977
1978
1979
1980
1981
Total Income
[6] 3,600 [7] 2,500 -0-
1,400 1,000 [8] 2,020 Expenses
(Operations)
(7,181)
(22,906)
(16,220)
(21,661)
(19,974)
(16,084)
Expenses
(Depreciation)
(8,084)
(9,858)
(19,805)
(12,180)
(18,502)
(11,550)
Total Expenses
(15,265)
(32,764)
(36,025)
(32,441)
(38,476)
(27,634)
Net Loss
(11,665)
(30,264)
(36,025)
(32,441)
(37,476)
(25,614)
*28 In 1977, petitioner purchased a 50-50 percent interest in a corporation which operated a restaurant known as the Lion's Den in the Royal Gorge area of Colorado. The restaurant property included 28 acres of land on which a wildlife park and petting zoo, known as Animal World, was located. On display at Animal World was a variety of exotic animals which were owned personally by petitioner and the other shareholder of Animal World. The public was charged a small admission fee to view the animals, but petitioner received none of such fees. The Lion's Den Restaurant continually sustained losses and in 1978, petitioner sold his interest in the corporation, reporting a loss of $ 4,528 on the sale. Petitioners engaged a certified public accountant to prepare their income tax returns. The accountant discussed with petitioner the possibility that the farm losses might be disallowed as arising from an activity not engaged in for profit and outlined the factors considered in making such a determination. Petitioners nonetheless reported a total loss of $ 172,994 for the six-year period between 1976 and 1982 with respect to the Weld County farm. In his notice of deficiency issues *29 with respect to the years at issue, respondent disallowed the farm losses for the years 1978 through 1981. Respondent also disallow automobile expenses and depreciation expenses. Finally, respondent determined additions to tax under section 6653(a) for 1975 and 1978 through 1980, and under sections 6653(a)(1) and 6653(a)(2) for 1981. ULTIMATE FINDINGS OF FACT Petitioner's exotic animal breeding activity was an activity not engaged in for profit during the years at issue. OPINION The first issue for our determination is whether petitioner's Weld County exotic animal farming activity was an "activity not engaged in for profit", which is defined in section 183(c) as an activity other than one with respect to which deductions are allowable under section 162 or under paragraphs (1) or (2) of section 212. As this Court has previously stated, section 183[9] is not a disallowance provision, but rather allows the taxpayer to deduct certain expenses which he would not otherwise be allowed to deduct. *30 Fox v. Commissioner,80 T.C. 972, 1006 (1983), affd. without published opinion 742 F.2d 1441 (2d Cir. 1984), affd. sub. nom. Barnard v. Commissioner,731 F.2d 230 (4th Cir. 1984), affd. without published opinions sub nom. Hook v. Commissioner, Krasta v. Commissioner, Leffel v. Commissioner, Rosenblatt v. Commissioner, Zemel v. Commissioner,734 F.2d 5, 6-7, 9 (3d Cir. 1984). If an activity is not engaged in for profit, section 183(b)(1) allows only those deductions which are not dependent on a profit motive. Section 183(b)(2) allows all other deductions which would otherwise be permitted only if the activity was engaged in for profit, but only to *31 the extent that the gross income derived from the activity exceeds the deductions allowed under section 183(b)(1). [10]
To be able to deduct expenses under section 162, a reasonable expectation of profit is not required, but the taxpayer must have had an honest and actual objective of making a profit. Section 1.183-2(a), Income Tax Regs. *32 ; Beck v. Commissioner,85 T.C. 557, 569 (1985); Flowers v. Commissioner,80 T.C. 914, 931 (1983); Dreicer v. Commissioner,78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). In this context, "profit" means an economic profit independent of tax savings. Estate of Baron v. Commissioner,83 T.C. 542, 557-559 (1984), affd. 798 F.2d 65 (2d Cir. 1986). The determination of petitioner's true objective is a question of fact to be resolved on the basis of all the surrounding circumstances. Finoli v. Commissioner,86 T.C. 697, 722 (1986); Beck v. Commissioner,85 T.C. at 570; Flowers v. Commissioner,80 T.C. at 931-932; Lemmen v. Commissioner,77 T.C. 1326, 1340 (1981). Petitioner has the burden of proving that he entered into his farm activity with the requisite profit objective. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933); Beck v. Commissioner, supra; *33 Flowers v. Commissioner, supra.
In determining whether petitioner had the requisite profit objective, we give greater weight to objective factors than to petitioner's bare statement of his intent. Section 1.183-2(a), Income Tax Regs.; Beck v. Commissioner, supra;Flowers v. Commissioner, supra;Siegel v. Commissioner,78 T.C. 659, 699 (1982). Petitioner has consistently stated to government authorities that his intent with respect to the exotic animal farm was not profit-oriented. He told zoning authorities, as well as USDA officials, that the farm was strictly a hobby and that the animals were not being raised for any commercial purpose. In a deposition taken in June, 1979, petitioner again stated that the animals were kept only as a hobby. In 1980, as the defendant in a criminal case, petitioner stated that he operated the farm as a hobby, and that he enjoyed the challenge of breeding and raising exotic animals. Only in the context of this case has petitioner taken the position that the farming activity was engaged in for profit. Having examined petitioners' subjective statements of *34 intent, we not turn to the objective facts before us. Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of nine objective factors relevant to the determination of whether an activity is engaged in for profit. The nine factors are: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. No single factor is controlling, but rather it is an evaluation of all the facts and circumstances in the case, taken as a whole, which is determinative. Section 1.183-2(b), Income Tax Regs. *35 ; Abramson v. Commissioner,86 T.C. 360, 371 (1986). The objective facts of this case do not support petitioner's contention that he entered into his activities with the requisite profit motive. Petitioner did not operate the farm in a businesslike manner. He failed to seriously analyze the profit potential of his exotic animal farming activities before undertaking such activities. After petitioner began his activities, he failed to keep complete and accurate financial records. The maintenance of complete and accurate books and records indicates that an activity is carried on in a businesslike manner. Section 1.183-2(b)(1), Income Tax Regs. Petitioner's records consisted of an envelope in his medical office into which he placed receipts, which were reviewed only once a year and then only for use in the preparation of his income tax returns. Petitioner failed to keep a running inventory of his animals and failed to maintain medical history or nutrition records for his animals. Moreover, no separate bank account was maintained for the Weld *36 County farm, and the record lacks any of petitioner's bank statements or canceled checks. Petitioner had no experience in the management of a farm of this nature, and he failed to seek advice from people with such experience. Preparation for an activity by extensive study of its accepted business, economic, and scientific practices, or consultation with those who are expert therein, may indicate that the taxpayer has a profit motive. Section 1.183-2(b)(2), Income Tax Regs. No such preparation or study occurred in this case. Neither petitioner nor Mrs. Hawkins were experienced in the care and breeding of exotic animals. Outside experts were rarely consulted to supplement their lack of expertise. Even when animals died or were ill, veterinarians were seldom called. The amount of time petitioners spent working on their exotic animal farm is more consistent with a hobby than a profit-seeking venture. Both petitioner and Mrs. Hawkins were employed full-time in petitioner's medical practice. Petitioners were therefore able to devote only a few hours to the *37 farm in the mornings or evenings or on weekends. Although petitioner stated that he expected his animals to increase in value, he only received $ 4,750 from 1976 through 1981 from the sale of animals. By contrast, the claimed expenses for keeping the animals during this same period totaled substantially more. Thus, while the assets could potentially increase in value, the costs incurred by petitioner in awaiting this appreciation substantially offset his gains. Petitioner was unsuccessful in his only other undertaking with respect to exotic animals. In 1977, petitioner acquired an interest in the Lion's Den Restaurant and Animal World, a combination restaurant and exotic animal showplace. After holding his interest for approximately one year, petitioner sold his interest at a $ 4,528 loss. Petitioner received no income from the display of his animals in connection with this venture. Petitioner has a lengthy record of losses with respect to his exotic animal farm activities. He sustained a string of losses over a six-year period, beginning in 1976, totaling $ 173,485. In the face of significant losses from operations over an extended period, petitioner did virtually *38 nothing to change his methods of operation. The manner in which petitioner cared for the animals is inconsistent with his alleged profit motive. The animals were kept in the same appalling conditions throughout the years in issue, despite the numerous investigations and citations by various authorities. He was repeatedly notified of deficiencies in his husbandry practices, but he made virtually no effort to improve those practices. The grossly inadequate care petitioner provided his animals, which may have affected their ability to reproduce, is inconsistent with his professed intent to make a profit from the sale of the animals. A further factor for consideration is petitioner's level of income from other sources. If a taxpayer has substantial income from sources other than the activity in question, this may be an indication that the activity is not engaged in for profit, particularly if the losses from the activity generate substantial tax benefits. Section 1.183-2(b)(8), Income Tax Regs. Petitioner was employed full-time as an osteopath, from which he *39 derived substantial income. Mrs. Hawkins also worked in petitioner's medical office. During all of the years in issue in which petitioners sustained losses from their exotic animal farming activities, their income from the medical practice exceeded such claimed losses; petitioners thus received the full tax benefit from the deductions generated by such activities. Finally, we consider whether elements of personal pleasure or recreation were involved in petitioners' pursuit of these activities. Section 1.183-2(b)(9), Income Tax Regs. Petitioners' primary objective for owning and raising exotic animals was the personal pleasure and gratification they derived from the activities. Petitioner has long been a wild game enthusiast. He has been on numerous African safaris and displays approximately 30 animals heads in his office. By purchasing the exotic animals and the Weld County farm, petitioners provided themselves with a place to relax after work and relieve the tensions that have built up during the day. An analysis of the objective factors before us, as well as petitioner's oft expressed sentiments with regard to the hobby nature of his activities, *40 leads us to conclude that petitioner did not engage in the exotic animal farming activities with the requisite profit objective. Petitioners, thus, may deduct expenses associated with the Weld County farm only as provided in section 183. The next issue for our determination is whether petitioners are entitled to deduct vehicle expenses and automobile depreciation for the taxable years 1978 through 1981. In order to be deductible, vehicle expenses must be incurred in the pursuit of a trade or business. Section 162(a). Expenses incurred in commuting from a residence to a business or in the course of other personal use are nondeductible personal expenses. Section 262; Green v. Commissioner,59 T.C. 456 (1972). Similarly, automobile depreciation is permitted as a deduction only if, and to the extent that, the automobile is used in the pursuit of a trade or business or for the production of income. Section 167(a). Petitioners bear the burden of proving their entitlement to, and the amounts of, their claimed deductions. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). *41 Because the Weld County farm was not a place of business, petitioner's use of his automobiles on the farm, in traveling to and from the farm and in attending auctions, is a nondeductible personal expense. Petitioner offered vague testimony with respect to the extent of the use of his automobiles in his medical practice. He stated that he drove 18,000 to 20,000 miles per year and that the distance between his office, hospital, and nursing home ranged between one-half to three miles but that the distance between the Weld County farm and his home or places of business, a distance he claims to have traveled every day, was approximately 19 miles. Given the vagueness of petitioner's testimony with respect to his use of his automobiles in his medical practice, we are unable to determine the number of miles petitioner travelled between his office, hospital and nursing home. Accordingly, we find that petitioners did not sustain their burden of proving their entitlement to deductions for vehicle expenses or depreciation. The final issue for our determination is whether petitioners are liable for additions to tax under section 6653(a) for the taxable years 1975, 1978, 1979, and 1980 *42 and under sections 6653(a)(1) and 6653(a)(2) for 1981. Sections 6653(a), prior to its amendment, and 6653(a)(1) impose a 5 percent addition to tax if any part of an underpayment is due to negligence or intentional disregard of the revenue laws. Section 6653(a)(2) imposes an addition to tax in the amount of 50 percent of the interest payable on that portion of the underpayment which is attributable to neligence. "Negligence" is defined as lack of care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). Petitioner was aware that deductions are not generally available for activities that are not engaged in for profit. In the preparation of his income tax returns, petitioner's certified public accountant queried him with respect to whether he engaged in the farming activities for profit. The accountant also outlined what factors are considered in determining whether the activity was engaged in for profit and explained the tax ramifications of the absence of a profit motive. *43 Petitioner was also well aware that the Weld County farming activities were not profit motivated but were instead pursued for petitioners' relaxation and recreation. We, therefore, conclude that the understatements in tax at issue resulted from petitioner's negligence or intentional disregard of the revenue laws. As such, petitioners are liable for the additions to tax under sections 6653(a), 6653(a)(1), and 6653(a)(2). To reflect concessions made by respondent, Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. * Computed as fifty percent of the interest due on the underpayment caused by negligence. ↩
2. Petitioner also practiced in Platteville, Colorado for approximately 10 months in 1968. ↩
3. Petitioner and Mrs. Hawkins married in 1978. The amounts for 1975 through 1977 were those reported on petitioner's individual income tax returns. ↩
4. Petitioner claims he drove a total of $ 18,000 to 20,000 miles each year. ↩
5. The income or loss for 1975 resulting from petitioner's activities with respect to the activities on the Weld County farm could not be determined. The information for taxable years 1976 and 1977 was derived from Dr. Hawkins' individual Federal income tax returns, as petitioners were not married in those years. ↩
6. The income for 1976 was comprised entirely of rental income from the farmhouse and accompanying facilities. Rental income was reported on separate forms for years after 1976; rental expenses claimed on those forms were not disallowed in the notice of deficiency. ↩
7. The income for 1977 was comprised entirely of agricultural subsidies. ↩
8. Of the $ 2,020 reported income for 1981, $ 1,970 was derived from the sale of crops. ↩
9. Section 183 provides as follows: (a) GENERAL RULE. -- In the case of an activity engaged in by an individual * * *, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section. ↩
10. Section 183(b) provides as follows: (b) DEDUCTIONS ALLOWABLE. -- In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed -- (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1). ↩